IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| MELISSA LEWIS, as mother and next friend of Payton Lewis | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. |
| DEKALB COUNTY BOARD OF EDUCATION, et al., | ) ) ) | 5:11-cv-02627-JEO |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This case is before the court on Defendants DeKalb County Board of Education, Mary Etta Bailey, Harold Bobo, Claude Callaham, Mark Richards, Terry Wooten, Ronald Bell, and Charles D. Warren's Motion to Dismiss (doc. 6) and Defendant Stuart Mitchell's Motion to Dismiss (doc. 7). The parties have been afforded an opportunity to brief the relevant issues. Upon consideration, the court finds that Defendants DeKalb County Board of Education, Mary Etta Bailey, Harold Bobo, Claude Callaham, Mark Richards, Terry Wooten, Ronald Bell, and Charles D. Warren's Motion to Dismiss (doc. 6) is due to be granted and Defendant Stuart Mitchell's Motion to Dismiss (doc. 7) is due to be granted in part and denied in part.

I.   **FACTS AND PROCEDURAL HISTORY**[1]

Defendant DeKalb County Board of Education ("the Board") is an agency of the State of Alabama. (Doc. 1 at ¶ 2). The Board is comprised of individual Defendants Mary Etta Bailey, Harold Bobo, Claude Callaham, Mark Richards, and Terry Wooten. (*Id.* at ¶ 3). In addition to the individual members of the Board, individual Defendant Charles D. Warren served as the Board Superintendent. (*Id.* at ¶ 6). The Board and its members, along with Defendant Warren, supervise Plainview High School and its employees. (*Id.*)

Defendant Ronald Bell is an employee of the Board and served as principal of Plainview High School. (*Id.* at ¶ 5). Defendant Stuart Mitchell is an employee of the Board and taught as a science teacher at Plainview High School. (*Id.* at ¶ 10).

Payton Lewis ("Payton") was a student in Defendant Mitchell's science class. (*Id.*). On October 6, 2010, Defendant Mitchell administered corporal punishment to Payton with a paddle with two holes drilled in it for receiving an unsatisfactory grade on a science test. (*Id.* at 10-11). Plaintiff alleges that Defendant Mitchell's paddling of Payton was so severe that it caused bruising that was visible for two weeks and humiliation. (*Id.* at ¶ 11). Plaintiff further alleges that Payton suffered such severe mental and physical trauma that he had to undergo counseling. (*Id.* at ¶ 12). Plaintiff also alleges that the paddling was a direct violation of the DeKalb County Schools' Code of Student Conduct and Student Handbook ("Handbook") that was created by the

---

[1] Because this action is before the court on a motion to dismiss, the facts set forth in the Complaint "'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). Thus, the facts that follow are those set forth in the Complaint.

Board, which outlines the "Due Process" procedures for administering punishment to students, including corporal punishment. (*Id.* at ¶¶ 7, 10).

On July 20, 2011, Plaintiff filed suit alleging violations of Payton's Fourteenth Amendment Due Process rights directly by Defendant Mitchell and vicariously through the Board, Board members, and Defendant Bell because Defendant Mitchell did not follow the Handbook's recommended procedure for administering punishment. (*Id.* at Count One and Two).

Additionally, Plaintiff alleges that Defendant Mitchell's actions towards Payton amount to an assault and battery, which caused both physical and emotional injury. (*Id.* at Count Three). Plaintiff also alleges that Defendant Bell and the Board's lack of supervision and training for Defendant Mitchell directly and proximately caused Payton's injury. (*Id.* at Count Four). Finally, Plaintiff alleges that the Board's disregard of Defendant Mitchell's actions, both previous and those directly relating to Payton, amounted to wantonness that is a direct and proximate cause of Payton's mental and physical injuries. (*Id.* at Count Five).

On August 25, 2011, Defendants Bailey, Bell, Bobo, Callaham, Richards, Warren, Wooten, and the Board filed a motion to dismiss Plaintiff's claims as to Counts One, Two, Four and Five.[2] (Doc. 6). The next day, on August 26, 2011, Defendant Mitchell filed a motion to dismiss Plaintiff's claims in their entirety as they related to him. (Doc. 7). Both motions have been fully briefed and are now ready for decision by the court.

---

[2] These Defendants only move to dismiss Count Two as to the individuals, not the Board. (Doc. 6 at 7-9).

II.     **STANDARD OF REVIEW**

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) allows for the dismissal of an action where the court finds that it lacks subject matter jurisdiction. This should be granted "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *75 Acres, LLC v. Miami-Dade Cty., Fla.*, 338 F.3d 1288, 1293 (11th Cir. 2003) (citing *Conely v. Gibson*, 355 U.S. 41, 45-46 (1957)). On a motion to dismiss for lack of subject matter jurisdiction, the party asserting jurisdiction bears the burden of proof. *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) provides for dismissal where a party fails to state a claim for which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (internal citations and quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id*.; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). This inquiry by the court is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party." *Dacosta v. Nqachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002) (citing *GJR*

*Invs., Inc. v. Cty. Of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998)). However, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he replies upon since the court must determine if the allegations provide for any relief on *any* possible theory." *Brooks v. Blue Cross Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *Robertson v. Johnson*, 376 F.2d 43 (5th Cir. 1967)).

**III.   ANALYSIS**

    **A.   Procedural Due Process Claim (Count I)**

Count One of Plaintiff's complaint is due to be dismissed pursuant to Federal Rule 12(b)(6). A plaintiff may not maintain a procedural due process claim for school officials' failure to follow school procedures in administering corporal punishment. *See Ingraham v. Wright*, 430 U.S. 651, 683 (1977) ("[T]he Fourteenth Amendment's requirement of procedural due process is satisfied by [a state's] preservation of common-law constraints and remedies."). In *Ingraham*, the Court held that although corporal punishment implicates Fourteenth Amendment liberty interests, where the state preserves common law traditions of the administration of corporal punishment, the due process requirement is satisfied. 430 U.S. at 679 ("[W]here the State has preserved what 'has always been the law of the land,' the case for administrative safeguards is significantly less compelling." (quoting *United States v. Barnett*, 376 U.S. 681, 692 (1964)). Further, students have no right under federal law to have punishments administered to them according to a school district's written procedures. *Hale v. Pringle*, 562 F. Supp. 598, 601-02 (M.D. Ala. 1983) ("[R]elying on *Ingraham*, this court must conclude that in view of the availability of traditional common law remedies the due process clause does not

require notice or a hearing prior to the imposition of corporal punishment in the Alabama public schools.").

Furthermore, the Eleventh Circuit has held that as long as Alabama provides a plaintiff with adequate state remedies for her claims, those remedies satisfy procedural due process. *McKinney v. Pate*, 20 F.3d 1550,1564 (11th Cir. 1994) (stating that where the state remedy is capable of providing a plaintiff with relief, due process is satisfied); *Dunn v. Alabama Agr. & Mechanical Univ.*, 719 So. 2d 224, 227 (Ala. Civ. App. 1998) (holding that where a plaintiff has an adequate state remedy for his injury, including the invocation of a court's jurisdiction, he has "not suffered a violation of his procedural due process rights").

Here, there are adequate state remedies through which Plaintiff may achieve relief. Plaintiff has even sought those remedies in the present action: she has brought suit against Defendant Mitchell for assault and battery and against Defendants Board, Board members, and Defendant Bell for negligent training and supervision and wantonness. Plaintiff's claim for assault and battery against Defendant Mitchell is an adequate state remedy because his actions are not barred by any immunity. Plaintiff's state law claims against Defendants Board, Board members, and Bell also provide adequate remedy for Plaintiff's procedural due process claim. Accordingly, Count One is due to be dismissed in its entirety.

      **B.**      **Substantive Due Process Claim (Count Two)**

"Officials acting under the color of state law violate the substantive component of the Due Process Clause only when their conduct 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Peterson v. Baker*, 504 F.3d 1331, 1336 (11th Cir. 2007) (quoting *Cty. Of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)). There is no due

process guarantee that imposes "liability whenever someone cloaked with state authority causes harm." *Lewis*, 523 U.S. at 848.  Furthermore, "the Fourteenth Amendment is not a 'font of tort law' that can be used, through Section 1983, to convert state tort claims into federal causes of action."  *Wilson v. School Bd. of Seminole Cty.*, 610 F.3d 588, 598 (11th Cir. 2010).  However, "excessive corporal punishment, at least where not administered in conformity with a valid school policy authorizing corporal punishment..., may be actionable under the Due Process Clause when it is tantamount to arbitrary, egregious, and conscience-shocking behavior." *Neal ex rel Neal v. Fulton Cty. Bd. of Education*, 229 F.3d 1069, 1075 (11th Cir. 2000).

In order for an instance of corporal punishment to rise to the level of "arbitrary, egregious, and conscience-shocking behavior," a plaintiff must allege "facts demonstrating that (1) a school official intentionally used an amount of force that was obviously excessive under the circumstances, and (2) the force used presented a reasonably foreseeable risk of serious bodily injury." *Id.*  The court must look both to whether the amount of force was objectively excessive and whether Defendant Mitchell subjectively intended to use that obviously excessive amount of force in circumstances where it was foreseeable that serious bodily injury could result.  *Id.*  To determine whether "the amount of force used is obviously excessive, [the court] consider[s] the totality of the circumstances.  In particular, ... (1) the need for the application of corporal punishment, (2) the relationship between the need and amount of punishment administered, and (3) the extent of the injury inflicted." *Id.*

With that in mind, the court turns to the allegations in this case.  In the Complaint, Plaintiff alleges that Defendant Mitchell ordered four students, including Payton, who made below a certain grade on a test to go into the hall.  Once in the hall, Defendant Mitchell told

7

Payton that "his daddy paddled Mitchell and Mitchell was going to paddle Payton for making an unacceptable grade on the test." (Complaint, Doc. 1 at ¶ 10). He then "used a wooden paddle that had two holes drilled in it to beat Payton so severely that it caused bruising that was visible for approximately two weeks ... [and] then hugged Payton in an inappropriate manner. (*Id.* at ¶ 11). Plaintiff further alleges that "Payton suffered such severe mental trauma based on Defendant Mitchell beating him that Payton had to undergo psychological counseling in an attempt to overcome the effects of the beating." (*Id.* at ¶ 12).

      Here, the question is whether the above factual allegations demonstrate that Defendant Mitchell intentionally used an amount of force that was obviously excessive under the circumstances, and whether the force used presented a reasonably foreseeable risk of serious bodily injury. To determine whether the amount of force used was obviously excessive, the court uses the three-factor test set forth in *Neal* ((1) the need for the application of corporal punishment, (2) the relationship between the need and amount of punishment administered, and (3) the extent of the injury inflicted). With respect to the first factor, Plaintiff alleges that Payton did not present any disruptive behavior that would warrant corporal punishment, but merely made a poor grade on a test. (Doc. 1 at ¶ 24). Such allegation is sufficient to at least create a question as to whether corporal punishment was necessary. With respect to the relationship between the need and amount of punishment administered, because Plaintiff asserts that corporal punishment was unwarranted in first place, it is likewise clear that, based on the allegations in the Complaint, Plaintiff has properly alleged that the amount of punishment administered outweighed the need for punishment in the first place. Finally, with respect to the extent of Payton's injuries, the complaint alleges that Payton had bruising for two weeks and suffered

mental trauma such that he had to undergo psychological testing. (*Id*. at ¶ 12). It is clear that the extent of Payton's injuries is an important factor in determining whether the paddling was obviously excessive. *See T.W. v. The School Bd. of Seminole Co., Florida*, 610 F.3d 588, 601 (11th Cir. 2010) (stating "[t]hough the 'extent and nature of the injury' is only one factor in our analysis, it is an important factor"). Here, the allegations regarding the extent of Payton's injuries, in combination with the other factors, are sufficient to allege that Defendant Mitchell's conduct was obviously excessive. *See S.S. v. Princeton House Charter School, Inc.*, No. 6:11-cv-1145-orl-31GJK, 2011 WL 4382203 (M.D. Fla Sept. 20, 2011) (finding "allegations of physical harm ... includ[ing], grabbing of the arms, dragging across a room, and physical restraint resulting in bruising on the neck and body" sufficient to survive a motion to dismiss under § 1983); *O.H. v. Volusia Co. School Bd.*, No. 6:07-cv-1545-orl-22DAB, 2008 WL 2901044 (M.D. Fla. July 23, 2008) (stating that "[b]ecause the extent of the injury is uncertain, this factor weighs in favor of denying the Motion to Dismiss and permitting discovery to reveal more about Defendant['s] ... actions and their effect on Plaintiff").

Having determined that the Complaint properly alleges that the paddling was obviously excessive, the question becomes whether the force used presented a reasonably foreseeable risk of serious bodily injury. Here, the court finds that the facts, as alleged in the Complaint, are sufficient to show that the risk of serious bodily injury was reasonably foreseeable. (Doc. 1 at ¶ 24)("The force of a 350-pound man using a weapon such as a paddle against a child less than half his weight presented a reasonably foreseeable risk of serious bodily injury."). Accordingly, the

undersigned finds that Plaintiff has sufficiently stated a claim for substantive due process as to Defendant Mitchell.[3]

Plaintiff also asserts that the individual Board members and Bell violated Payton's substantive due process rights by being indifferent to Mitchell's repeated violation of their corporal punishment policy. (Doc. 11 at 5). However, allegations that Defendant Bell and the individual Board members were deliberately indifferent to Mitchell's alleged repeated beatings in violation of school board policy, simply do not rise to the conscious shocking level that is required to show a substantive due process violation. Thus, Plaintiff's substantive due process claims against the Defendant Board members individually and Defendant Bell in his individual capacity are due to be dismissed.

Accordingly, Count Two is due to be dismissed as to the individual board members and Bell, but is viable as to Defendant Mitchell and the Board, which did not move to dismiss this claim.

C. **State Law Claims (Counts Three, Four, and Five)**

Plaintiff has asserted various state law claims against the Board and the individual Defendants. As a preliminary matter, the Board argues that under Alabama law, this Court lacks

---

[3] In his reply brief, Defendant Mitchell raises the issue of qualified immunity for the first time. (Doc. 14 at 6-10). Not only has Plaintiff not had an opportunity to respond to Defendant Mitchell's qualified immunity assertions, the court finds that such a determination is premature at this point in time. Additionally, Mitchell also raises the issue of statutory immunity for the first time in his reply brief. (Doc. 14 at 10-11). Specifically, he argues that under the No Child Left Behind Act, teachers are immune for acts done on behalf of the school if certain criteria are met. 20 U.S.C. § 6736(a). However, that same statute provides that the "limitations on the liability of a teacher under this subpart shall not apply to any misconduct that ... involves misconduct for which the defendant has been found to have violated a Federal or State civil rights law." *Id.* at § 6736 (d)(1)(C). Here, Plaintiff is alleging just such a violation, accordingly, the issue of whether the limitation on liability contemplated by § 6736(a) is premature.

subject matter jurisdiction over both Plaintiff's negligent training and supervision claim and her wantonness claim[4] as it pertains to the Board.  Section 14 of the Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity."  Ala. Const. Art. 1, § 14 (1901).  State courts have affirmed that mandate, stating: "'The wall of immunity erected by § 14 is nearly impregnable.' ...  Indeed, as regards the *State of Alabama and its agencies*, the wall is *absolutely* impregnable.  'Absolute immunity' means just that–the State and its agencies are not subject to suit under any theory."  *Alabama Dept. of Corrections v. Montgomery County Commission*, 11 So. 3d 189, 191 (Ala. 2008) (quoting *Patterson v. Gladwin Corp.*, 835 So. 2d 137, 142 (Ala. 2002)) (internal citations omitted).

County school boards are state agencies and as such are entitled to absolute immunity as provided by Section 14 of the Alabama Constitution.  "'For purposes of § 14 immunity, county boards of education are considered agencies of the state.' ...  We now reassert the absolute constitutional immunity of county boards of education."  *Ex parte Hale County Bd. of Edu.*, 14 So. 3d 844, 847-49 (Ala. 2009) (quoting *Louviere v. Mobile Cty. Bd. of Edu.*, 679 So. 2d 873, 877 (Ala. 1995)).  Under Alabama law, the DeKalb County Board of Education is entitled to absolute immunity from state law claims.  This Court has no subject matter jurisdiction over either the state law claim of negligent training and supervision or the wantonness claim against the Board.  Consequently, Counts Four and Five against the Board are due to be dismissed.

Having established that the Board is immune from the state law claims, the court will address the remaining claims against Defendant Mitchell (Count Three) and the Board members and Bell (Counts Four and Five).

---

[4] Count Three, the assault and battery count, is only brought against Defendant Mitchell.

1.   **Assault and Battery (Count Three)**

Defendant Mitchell argues Count Three should be dismissed because, as a state agent, he is immune from suit.  However, he is not entitled to that defense.  While there are many situations where state agents are immune from suit, a state agent shall not be immune from civil liability when he acts beyond the scope of his or her authority.  *Ex parte Turner*, 840 So. 2d 132, 135-36 (Ala. 2002) (finding no evidence that the assistant principal acted outside the scope of his authority when he physically detained a student in order to determine whether she was a student after he discovered her walking through the halls without a hall pass); *Ex parte Cranman*, 792 So. 2d 392, 406 (Ala. 2000).

However, unlike the assistant principal in *Turner*, Defendant Mitchell acted beyond the scope of his authority in allegedly administering corporal punishment outside the guidelines proscribed by the Handbook.  For that reason, his state-agent immunity claim for Plaintiff's assault and battery claim fails.  Thus. Defendant Mitchell's motion to dismiss Count Three is due to be denied.

2.   **Negligent Training and Supervision (Count Four)**

Count Four of Plaintiff's complaint, as to the Board members individually and to Defendant Bell is due to be dismissed for failure to state a claim on which relief may be granted. FED. R. CIV. P. 12(b)(6).  "Alabama law is clear that the tort of negligent supervision or training requires as an element the existence of a master-servant relationship....  A supervisor is not the master of a subordinate, nor is the subordinate the servant of the supervisor; rather, as Alabama cases make plain, the status of 'master' is restricted to one who is actually or essentially the employer of the servant."  *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1315 (S.D. Ala. 2001).

Alabama does not recognize a cause of action against one serving in a supervisory capacity for negligent failure to train or supervise a subordinate. *See id*.

Because Bell and the individual Board members are not the direct employers of Defendant Mitchell, there is no servant-master relationship. These Defendants do no more than supervise Defendant Mitchell and other employees of the Board. Because Alabama law does not recognize a cause of action against a supervisor for negligent failure to train or supervise a subordinate, Count Four as it pertains to the individual Board members and Defendant Bell is due to be dismissed.

### 3. Wantonness (Count Five)

Count Five alleges that Bell and the individual board members "acted with recklessly or with conscious disregard of the rights and/or safety of Payton Lewis [and] failed to prevent injury to [her]." (Doc. 1 at ¶ 37). The Complaint further alleges that the aforementioned Defendants "knew or should have known of Defendant [Mitchell's] continuous violations of the Dekalb County Board of Education policies and procedures including the beating of students." (*Id.*) Defendants argue that Plaintiff's wantonness claim is simply a restatement of her negligent supervision and training Claim (Count Four) and is due to be dismissed for the same reasons. The court agrees. Because Plaintiff fails to show that Bell and the individual Board members had a master-servant relationship, such that those Defendant can be liable for wanton training or supervision, Plaintiff's claim must fail. Accordingly, Count Five is due to be dismissed.

## IV.   CONCLUSION

Accordingly, the court finds that the motion to dismiss by Defendants Board, Bailey, Bobo, Callahan, Richards, Wooten, Bell and Warren (doc. 6) is due to be granted. Additionally,

Defendant Mitchell's motion to dismiss (doc. 7) is due to be granted in part and denied in part. Specifically, all claims except for Counts Two and Three are due to be dismissed against Defendant Mitchell. The following claims remain before the court: Count Two as to the Board and Mitchell and Count Three as to Mitchell. A separate order will be entered.

**DONE**, this 2nd day of April, 2012.

*John E. Ott*
_____
**JOHN E. OTT**
United States Magistrate Judge