IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| MELISSA LEWIS, as mother and next friend of Payton Lewis | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 5:11-cv-02627-JEO ) |
| DEKALB COUNTY BOARD OF EDUCATION, et al., | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This case is before the court on Defendant DeKalb County Board of Education's ("the Board") Motion for Summary Judgment (doc. 33), and Defendant Stuart Mitchell's ("Mitchell") Motion for Summary Judgment (doc. 35).[1] The motions have been fully briefed and are properly under submission before the court. (Docs. 34, 36, 42, 43, 50, 52). Also before the court are Defendants' Motions to Strike. (Docs. 51 & 53).

This case stems from an incident between Plainview High School ("PHS") seventh grade student Payton Lewis and science teacher Defendant Mitchell that resulted in Mitchell hitting Payton once on the buttocks with a paddle. The only claims pending before the court are as follows: Count Two (the substantive due process claim) as to the Board and Mitchell and Count Three (the assault and battery claim) against Mitchell.[2] Defendants contend that they are entitled to judgment as a matter of law on all remaining claims. (Docs. 33 at 1 & 35 at 1). For the

---

[1] References herein to "Doc. ___" are to the electronic numbers assigned by the Clerk of the Court. References to page numbers are to the electronic page numbers found at the top of the document. References to the depositions are to the page numbers and lines on the original document, not the electronic numbers.

[2] *See* Doc. 24 (Order entered on April 2, 2012, granting Defendants Board, Bailey, Bobo, Callahan, Wooten, Bell, and Warren's motion to dismiss, and granting in part and denying in part Mitchell's motion to dismiss.)

reasons set forth below, Defendants' motions for summary judgment are due to be granted in part and Defendants' Motions to Strike is due to be denied as moot.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[3]

Defendant Board is a county board of education organized pursuant to ALABAMA CODE § 16-8-1, *et seq*. (Doc. 34 at 4; Doc. 42 at 5). PHS is owned and operated by the Board. (*Id.*) Defendant Stuart Mitchell is an employee of the Board and has been a science and physical education teacher at PHS since 1992. (Doc. 38-1, Mitchell Dep. at 7-12). Payton was a student in Mitchell's seventh grade science class at PHS during the 2010-2011 school year. (Doc. 38-2, Payton Dep. at 6-15). Melissa Lewis is the mother of Payton and filed this lawsuit as parent and next friend of Payton. (Doc. 38-4, Lewis Dep. at 16; Doc. 1 at ¶ 1).

Payton alleges and his testimony demonstrates that on October 6, 2010, Mitchell hit Payton with a paddle[4] with two holes drilled in it for receiving an unsatisfactory grade on a science test. (Doc. 38-2, Payton Dep. at 19-32; Doc. 1 at 10-11). Defendant Mitchell testified that he paddled Payton for failing to submit a homework assignment in addition to having "prior disciplinary violations, offenses or write ups." (Doc. 38, Mitchell Aff. at 4; Doc. 38-1, Mitchell Dep. at 66-67, 80-81). Plaintiff alleges that Mitchell's paddling of Payton was humiliating and was so severe that it caused bruising that was visible for two weeks. (Doc. 1 at ¶ 11). Specifically, Plaintiff testified that Payton's bruising persisted for several days, eventually turning into bumps approximately five days after the paddling and that Payton experienced signs of discomfort when sitting approximately five days after the paddling. (Doc. 38-4, Lewis Dep. at

---

[3] The facts are presented in the light most favorable to the plaintiff for purposes of summary judgment.

[4] The paddle is described as being 23 inches long and 9/16 of an inch thick. (See Doc. 43 at ¶ 46).

50-51). Payton did not go see a doctor or seek medical attention as a result of the paddling. Plaintiff did not seek medical attention for Payton because she didn't think there was anything a doctor could do for a bruise. (Doc. 38-2, Payton Dep. at 33-35; Doc. 38-4, Lewis Dep. at 56-58). Payton did not suffered any permanent physical damage as a result of the paddling. (Doc. 43 at 8). Several school officials testified that had the bruising been caused by Payton's mother rather than Mitchell, they would have contacted the Alabama Department of Human Resources. (Doc. 38-5, Bell Dep. at. 145; Doc. 38-11, Barksdale Dep. at 127-28; Doc. 38-10, Warren Dep. at 137-40). Plaintiff further alleges that Payton suffered such severe mental and physical trauma that he had to undergo counseling. (Doc. 1 at ¶ 12). Payton attended five therapy sessions at Plainview High School at the behest of school officials. (Doc. 38-4, Lewis Dep. at 86-88). However, Payton testified that he was upset about the paddling for "maybe a day" and that the other students did not say anything to him about it. (Doc. 38-2, Payton Dep. at 39). In fact, even after the paddling, Payton and his friends would often go to Mitchell's classroom during breaks to talk with Mitchell about fishing and other Sports. (Doc. 38-2, Payton Dep. at 13-14).

      Plaintiff also alleges that the paddling was a direct violation of the DeKalb County Schools' Code of Student Conduct and Student Handbook ("Handbook"), which was created by the Board and outlines the "Due Process" procedures for administering punishment to students. Specifically, Plaintiff alleges that the Handbook does not authorize corporal punishment for matters not listed as offenses therein, such as making a bad grade. (Doc. 1 at ¶¶ 7, 19). Several school officials, including Defendant Mitchell, testified that paddling a student for making a bad grade is either a violation of the Handbook or is unreasonable. (Doc. 38-10, Warren Dep. at 164; Doc. 38-5, Bell Dep. at 37, 151-52; Doc. 38-11, Barksdale Dep. at 24; Doc. 38-1, Mitchell Dep.

at 47). After reviewing a photograph of the bruising on Payton's buttocks as a result of the paddling (doc. 37-4), several school officials either could not determine whether Mitchell applied moderate force in disciplining Payton or stated that the Handbook does not allow for the use of the amount of force reflected by the photograph. (Doc. 38-10, Warren Dep. at 137-39; Doc. 38-11, Barksdale Dep. at 123-24; Doc. 38-5, Bell Dep. at 97).

On July 20, 2011, Plaintiff filed suit alleging violations of Payton's Fourteenth Amendment Due Process rights by Defendant Mitchell and vicariously through the Board, individual Board members, and other supervisory school officials because Defendant Mitchell did not follow the Handbook's recommended procedure for administering punishment. (Doc. 1 at ¶ 3, Counts One & Two). Plaintiff also alleges that Defendant Mitchell's actions towards Payton amount to an assault and battery, which caused both physical and emotional injury. (*Id.* at Count Three). The Board and Mitchell have now moved for summary judgment on the remaining claims: the substantive due process claim (Count Two) against the Board and Mitchell and the assault and battery claim against Mitchell (Count Three). (Doc 1 at 8-9).

## II.   SUMMARY JUDGMENT STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam ) (citation to former rule omitted); FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary

judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52).  However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50; *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden" so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988) (quoting *Anderson*, 477 U.S. at 254). Nevertheless, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be

given the benefit of every inference, but only of every reasonable inference. *Brown v. Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen*, 121 F.3d at 646.

### III. ANALYSIS

#### A. Substantive Due Process Claim (Count Two)

Plaintiff brings his substantive due process claim against both remaining Defendants: (1) a claim against Mitchell for the excessive use of force that presented a reasonably foreseeable risk of serious bodily injury when he paddled Payton for "making a grade below a seventy on a test" and (2) a claim against the Board for the "intentional or reckless failure to obey and follow or otherwise enforce Code" by being indifferent to Mitchell's repeated violation of the Handbook's corporal punishment policy. (Doc. 1 at 7-8, Doc. 11 at 5). The court will first address Plaintiff's claims against Mitchell.

#### 1. Mitchell

"The Due Process Clause protects individuals against arbitrary exercises of government power, but 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'" *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty.*, 610 F.3d 588, 598 (11th Cir. 2010) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998)). "To be arbitrary in the constitutional sense, an executive abuse of power must 'shock[ ] the conscience.'" *Id.* (quoting *Lewis*, 523 U.S. at 846) (alterations in original). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Wilson,* 610 F.3d at 598. However, "[m]ere

negligent conduct ... does not reach the level of a constitutional violation.... Indeed, even intentional wrongs or conduct that amounts to an intentional tort under state law 'will rise to the level of a substantive due process violation only if it also shocks the conscience.'" *A.B. ex rel. Baez v. Seminole Cnty. Sch. Bd.*, 6:05CV802ORL31KRS, 2005 WL 2105961 (M.D. Fla. Aug. 31, 2005) (quoting *Waddell v. Hendry Cnty Sheriff's Office,* 329 F.3d 1300, 1305 (11th Cir. 2003) (internal citation omitted). In other words, there is no due process guarantee that imposes "liability whenever someone cloaked with state authority causes harm." *Lewis*, 523 U.S. at 848. "Both [the Eleventh Circuit] and the Supreme Court have 'said repeatedly that the Fourteenth Amendment is not a "font of tort law" that can be used, through section 1983, to convert state tort claims into federal causes of action.'" *Wilson*, 610 F.3d at 598 (quoting *Neal ex rel. Neal v. Fulton Cnty Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir. 2000)).

    That being said, "excessive corporal punishment, at least where not administered in conformity with a valid school policy authorizing corporal punishment..., may be actionable under the Due Process Clause when it is tantamount to arbitrary, egregious, and conscience-shocking behavior." *Neal*, 229 F.3d at 1075. While it is undisputed that the paddling administered in this case occurred in the school setting, the court must first address Plaintiff's contention that Defendant Mitchell's actions did not constitute corporal punishment.

    While the Eleventh Circuit has not precisely defined corporal punishment, it has recognized that the "touchstone of corporal punishment in schools appears to be the application of physical force by a teacher to punish a student for some kind of school-related misconduct." *Neal*, 229 F.3d at 1072. It has further stated that

    "Not all corporal punishment cases arise under ... circumstances" where "school

> officials, subject to an official policy or in a more formal disciplinary setting, mete out spankings or paddlings to a disruptive student." [*Neal*, 229 F.3d at 1072.] Many "involve less traditional, more informally-administered, and more severe punishments." *Id.* The key inquiry is not what form the use of force takes but whether the use of force is "related to [the student's] misconduct at school and ... for the purpose of discipline." *Id.* at 1073; *see also Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 173-74 (3d Cir. 2001).

*Wilson*, 610 F.3d at 598-99. In other words, the question here is whether Mitchell was punishing Payton for his misconduct at school when he paddled him for failing his science test.

Under Plaintiff's version of the facts, which the court accepts as true for purposes of summary judgment, Payton was paddled for failing a science test. While this is outside of the permitted reasons for corporal punishment established by school policy (doc. 38-10, Warren Dep. at 164; doc. 38-5, Bell Dep. at 37, 151-52; doc. 38-11, Barksdale Dep. at 24; doc. 38-1, Mitchell Dep. at 47), Defendant Board still asserts that it is punishment for misconduct (failing the test) at school. (Doc. 50 at 4-5 of 14). As such, the Board argues that Mitchell's actions in paddling Payton constitute corporal punishment. *Compare Neal*, 229 F.3d 1069 (finding it was corporal punishment when a football coach threw a weight lock at a student as punishment for hitting another student with the same weight lock), *with Hatfield v. O'Neill*, --- Fed. App'x ----, 2013 WL 4056236 (11th Cir. August 13, 2013) (finding it was not corporal punishment when a teacher ripped skin off a student's lips, forcefully fed student, forced her thumb down her throat, and hit student on the head where she had previously undergone brain surgery because student had not engaged in misconduct).

However, the court need not decide the issue because Plaintiff still must prove that Mitchell's conduct "shocks the conscience." *Hatfield*, 2013 WL 4056236 at *5. In determining whether an action "shocks the conscience" in a school setting, regardless of whether the

complained upon act constitutes corporal punishment, the Eleventh Circuit has applied the test laid out in *Neal*.[5]  *Id.*

In order to establish that the paddling in question was conscience-shocking, Plaintiff must prove that "(1) a school official intentionally used an amount of force that was obviously excessive under the circumstances, and (2) the force used presented a reasonably foreseeable risk of serious bodily injury." *Neal*, 229 F.3d at 1075.  In determining whether the amount of force used is obviously excessive, the court considers the totality of the circumstances by examining: "(1) the need for the application of corporal punishment, (2) the relationship between the need and amount of punishment administered, and (3) the extent of the injury inflicted." *Id.*

Viewing the facts in the light most favorable to Plaintiff, the court must first determine whether Mitchell's administration of one "lick" with a paddle to Payton for failing a science test was obviously excessive.  The first factor in this determination asks the court to consider the need for the application of force.  At this step, it is not the court's job to pass judgment on whether force was appropriate as a policy matter, but to "look at the circumstances surrounding

---

[5] In addition to analyzing claims of "abuse" (as opposed to corporal punishment) under the framework established in *Neal*, courts have also simply looked to whether the behavior shocks the conscience.  "Not all physical injuries to a student caused by a teacher amount to corporal punishment.  A range of teacher conduct exists that is neither corporal punishment nor so conscience-shocking as to trigger a substantive due process violation." *Hatfield*, 2013 WL 4056236 at *5 (finding that forceful feeding that caused the student's gums to bleed, removal of skin from student's lips, and forcing student's thumb down her throat to stop her from sucking on her thumb were not conscience shocking); *Wilson*, 610 F.3d at 599 ("We need not determine the precise analysis we should employ in evaluating whether the use of force by a school official rises to that level because, under any analysis, it is inconceivable that tripping a student and causing the student to stumble, without more, violates the Constitution."); *Mahone v. Ben Hill Cnty Sch. Sys.*, 377 F. App'x 913, 916 (11th Cir. 2010) (finding that shoving a student into a trash can for no legitimate reason, thereby causing the student to suffer psychological injuries, did not shock the conscience in a constitutional sense); *see also Lillard v. Shelby Cnty Board of Education,* 76 F.3d 716, 725-26 (6th Cir. 1996) ("it is simply inconceivable that a single slap [to the face] could shock the conscience" even when the teacher had no legitimate purpose for such conduct)).  It is highly likely that a single hit to the buttocks with a paddle likewise falls into this range of behaviors that does not shock the conscience.  Nevertheless, out of an abundance of caution, the court will analyze the issue under the factors set forth in *Neal*.

the use of force to determine whether the force is 'capable of being construed as an attempt to serve pedagogical objectives.'" *Wilson*, 610 F.3d at 600. Plaintiff contends that Payton was paddled for failing a test. Construing the evidence in a light most favorable to Plaintiff, the court is not convinced that the use of force served a pedagogical objective. While paddling a child for making a poor grade arguably could be construed as an attempt to get the child to perform better on the next test, which would be a pedagogical objective, this is a weak justification for the use of force in this instance. Additionally, this is only one of the factors to be considered.

As for the second factor, the court must consider the relationship between the need for force and the amount of force used. Here, as just noted, the need for force was very low or non-existent – paddling a child for failing a test is obviously an extreme response that is not in line with the school's policies regarding corporal punishment. While Payton was paddled only one time, he complained of bruising, pain, and saw a therapist as a result of the incident. Given that the need for force was very low, the amount of force used exceeded the need under these facts. However, this does not end the court's analysis.

The final consideration is the extent of Payton's injuries. "Though the 'extent and nature of the injury' is only one factor in [the] analysis, it is an important factor." *Id*. at 601 (quoting *Neal*, 229 F.3d at 1076). While the record supports the conclusion that Payton was injured, his injuries were minor. *Neal*, 229 F.3d at 1076 ("We recognize that any time a student is slapped or paddled, whether pursuant to or apart from a school policy, the student may suffer some pain or injury. But the kind of minor injury suffered by a student during the administration of traditional corporal punishment will rarely, if ever, be the kind of injury that would support a federal due process claim for excessive corporal punishment under the test we adopt today."). Payton

testified that the paddling hurt when he received it, but his buttocks quit hurting the same day. (Doc. 38-2, Payton Dep. at 27). Payton did not seek medical attention as a result of the paddling nor did the pain cause him to refrain from participating in his normal activities. (Doc. 38-2, Payton Dep. at 35; Doc. 38-4, Lewis Dep. at 57-58). The paddling left Payton with bruises, which his mother testified turned to "little bumps" about five days later.[6] (Doc. 38-4, Lewis Dep. at 50-51). Plaintiff also testified that Payton exhibited signs of discomfort when sitting for approximately five days, but she agrees that Payton suffered no permanent physical damage as a result of the paddling. (Lewis Dep. at 50-51). Finally, Plaintiff claims the paddling left Payton with "severe mental trauma" that caused him to "undergo psychological counseling in an attempt to overcome the effects of the beating." (Doc. 1 at 4). However, Payton testified that he was upset about the paddling for "maybe a day" and that he and his friends continued to go to Mitchell's class room during class breaks to speak with Mitchell about fishing and sports after the paddling. (Doc. 38-2, Payton Dep. at 13-14, 39-40). Payton did attend therapy sessions at PHS at the behest of school officials (doc. 38-4, Lewis Dep. at 86-88) for five sessions. (Doc. 38-4, Lewis Dep. at 56-57; Doc. 38-2, Payton Dep. at 39-40). By his own testimony, Payton did not incur any permanent or debilitating physical injuries.

      Having considered all the factors, the court must look at the totality of the circumstances to determine whether the force used by Defendant Mitchell when he paddled Payton for failing a test was obviously excessive. The court finds as a matter of law that it was not. While paddling

---

[6] In her brief in opposition to summary judgment, Plaintiff states that "Payton's bruising persisted for several days, eventually turning into blisters approximately five days after the paddling." (Doc. 42). However, Plaintiff's testimony is that there were raised bumps around the area, but that she would not call it blistering. (Doc. 38-4, Lewis Dep. at 50-51). Nevertheless, this inconsistency is immaterial to the court's final determination of this matter.

Payton for failing a test was more force that was necessary under the circumstances, because the injuries were minor, the court concludes that the use of force was not obviously excessive. *Compare Wilson*, 610 F.3d 588 (11th Cir. 2010) (teacher's restraining of student after he refused to stop scratching an insect bite that was "red and raw looking," pinning of student's arms behind his back while teacher was leading student to cool down room, inappropriate restraint of student, and infliction of psychological injuries did not violate the Constitution where student experienced nothing more than transient pain as a result of the force and never received medical treatment for any physical injuries) and *Peterson v. Baker*, 504 F.3d 1331 (11th Cir. 2007) (choking a student until he lost his breath and sustained blue and red bruises and a scratch on his neck was not obviously excessive because "the extent of the student's bodily injury was not serious"), *with Hatfield*, 2013 WL 4056236 (considering the totality of the circumstances, including the fact that the child had profound mental and physical disabilities and that they were no justification for the use of force, a teacher hitting the student in the head where the child previously had brain surgery shocks the conscience); *Neal*, 229 F.3d at 1076 (hitting a student in the eye with a metal weight lock, permanently destroying the eye, was obviously excessive); and *Kirkland ex rel. Jones v. Greene County Bd. of Educ.* 347 F.3d 903, 904 (11th Cir. 2003) (striking a student with a metal cane on the head, ribs, and back with sufficient force to cause a large knot and continuing migraine headaches was considered excessive). "Because [Mitchell's] force was not obviously excessive, [the court] need not consider whether the force ... used presented a reasonably foreseeable risk of serious bodily injury." *Wilson*, 610 F.3d at 602.

Substantive due process claims are reserved for "extraordinary circumstances." *Wilson*, 610 F.3d at 602. While Mitchell's conduct may have been unwarranted and unjustified, his

12

administration of one "lick" with a paddle to Payton's buttocks was not "so brutal, demeaning and harmful as literally to shock the conscience of the court." *Id.* Payton's injury is exactly the type of "minor injury" that the *Neal* court declared would not support a due process claim for excessive corporal punishment. Since Mitchell's paddling of Payton does not shock the conscience, Payton's Substantive Due Process rights were not violated. Accordingly, Count Two against Defendant Mitchell is due to be dismissed and summary judgment as to this claim is due to be granted.

### 2.     DeKalb County Board of Education

Plaintiff also brings a substantive due process claim against the Board for the "intentional or reckless failure to obey and follow or otherwise enforce Code" by being indifferent to Mitchell's repeated violation of the Handbook's corporal punishment policy. (Doc. 1 at 7-8, Doc. 11 at 5). "Officials acting under the color of state law violate the substantive component of the Due Process Clause only when their conduct 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Peterson v. Baker*, 504 F.3d 1331, 1336 (11th Cir. 2007) (quoting *Lewis*, 523 U.S. at 847). However, § 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor.... A county does not incur § 1983 liability for injuries caused solely by its employees." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Wilson*, 610 F.3d at 603 (quoting *McDowell*, 392 F.3d at 1289).

Because the court has held that Mitchell did not violate Payton's constitutional rights, Plaintiff's dependent substantive due process claim against the Board must fail, regardless of Plaintiff's evidence related to the Board's allegedly indifferent customs or policies. The substantive due process claim against the Board is, therefore, due to be dismissed with prejudice, and summary judgment as to this claim is due to be granted.[7]

### B. Assault and Battery (Count Three)

The final claim remaining in this case is Plaintiff's state law assault and battery claim against Defendant Mitchell. (Doc. 1 at 9). While it was initially proper for the court to consider Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a), in light of the undersigned's dismissal of all federal claims, the prudent decision at this juncture is to dismiss the assault and battery claim without prejudice so it may be adjudicated in the Alabama courts. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction.").

"State courts, not federal courts, should be the final arbiters of state law." *Baggett v. First Nat'l Bank of Gainesville,* 117 F.3d 1342, 1353 (11th Cir. 1997). Where a court has dismissed all federal claims from a case, there is a very strong argument for dismissal, especially where the federal claims are dismissed prior to trial. *Id.* (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even

---

[7] Defendants Mitchell and the Board each moved to strike certain affidavits submitted by Plaintiff and certain portions of Plaintiff's deposition. (See Docs. 51 & 53). Even if the court were to consider the affidavits, Defendants are still entitled to summary judgment. Accordingly, Defendants' motions to strike certain evidence are due to be denied as moot.

though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Ingram v. Sch. Bd. of Miami-Dade Cnty*, 167 Fed. App'x 107, 108-09 (11th Cir. 2006) (holding that because the district court dismissed all of the federal claims based on the pleadings and before trial, the court appropriately declined to exercise supplemental jurisdiction over the remaining state claim); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").

      However, before dismissing Plaintiff's remaining claim, the court must be aware of whether the statute of limitations has run as to that claim. "If the state claim has become time-barred during the pendency of the federal action then the court should exercise supplemental jurisdiction despite the dismissal of all of the federal claims." *Ingram*, 167 Fed. App'x at 109 (internal citation omitted). While "[t]he applicable statute of limitations for a claim of assault is two years," *Simmons v. Mobile Infirmary Med. Ctr.*, 391 F. Supp. 2d 1124, 1131 (S.D. Ala. 2005), that limitations period is tolled while the claim is pending "and for a period of 30 days after it is dismissed unless State law provides a longer tolling period." 28 U.S.C. § 1367(d); *Weinrib v. Duncan*, 962 So. 2d 167, 169 (Ala. 2007) (holding that a plaintiff has thirty days to refile his or her state-law claim in state court after a federal court's entry of the order of dismissal), *cf. Roden v. Wright,* 611 So. 2d 333 (Ala. 1992) (plaintiff's refiled action conformed with 28 U.S.C. § 1367(d), where the plaintiff refiled his state law claims within 17 days after the federal court's dismissal of the plaintiff's state-law claims without prejudice); *Tolbert v. Briggs & Stratton Corp.*, 510 F. Supp. 2d 549, 557 (M.D. Ala. 2007), *aff'd*, 256 Fed. App'x 340 (11th Cir. 2007) ("Pursuant to 28 U.S.C. § 1367(d), the applicable statute of limitations under state law will

be tolled 30 days so as to allow [a plaintiff] time to refile that claim in state court.").

Here, the court has found that Plaintiff's federal § 1983 claims against Mitchell and the Board are due to be dismissed with prejudice, leaving only her state assault and battery claim against Mitchell. Accordingly, the court further finds that Count III as to Defendant Mitchell is due to be dismissed without prejudice to Plaintiff's right to refile the claim in state court. *Ingram*, 167 F. App'x at 109 ("When a court decides not to exercise supplemental jurisdiction under § 1367(c)(3) because only state claims remain, the proper action is a dismissal without prejudice so that the complaining party may pursue the claim in state court.").

## IV. CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment (docs. 33 & 35) are due to be granted as to Count II and all the substantive due process claims against Defendant Mitchell and Defendant DeKalb County Board of Education are due to be dismissed with prejudice. Plaintiff's assault and battery claim (Count III) as to Defendant Mitchell is due to be dismissed without prejudice. Additionally, Defendants' motions to strike (docs. 51 & 53) are due to be deemed moot. A separate order will be entered.

**DONE**, this 18th day of November, 2013.

_John E. Ott_

**JOHN E. OTT**
Chief United States Magistrate Judge